Wis.]          JANUARY TERM, 1900.            481

Spaulding and another vs. North Milwaukee Town Site Co. and others.

SPAULDING and another, Appellants, vs. NORTH MILWAUKEE
    TOWN SITE COMPANY and others, imp., Respondents.
SAME, Respondents, vs. NORTH MILWAUKEE TOWN SITE COM-
    PANY, imp., Appellant.
SAME, Respondents, vs. MEYER and others, imp., Appellants.

| 106 | 481 |
| 109 | 154 |
| 106 | 481 |
| 110 | 1551 |
| 106 | 481 |
| 114 | 613 |

*January 11 — April 27, 1900.*

Corporations: Promoters: Fraud: Sale to corporation by directors:
    Equity: Judgment: Joint and several liability: Receivers.

1. In order to entitle a corporation which has received property from
promoters at a higher price than it cost them, or at a price above
the fair market value, to rescind or to recover back the profits
made by the promoters, the promoters must have deceived or mis-
led some of their associates, either by affirmative words or acts, or
by silence under such circumstances that they might reasonably
apprehend that such associates might act upon a wrong assump-
tion or understanding.

2. The owners of undivided interests in two tracts of land which they
had purchased for $900 and $1,000 per acre respectively, agreed
among themselves to form a corporation and convey the land to it
at $1,500 per acre in exchange for stock. The owners of one in-
terest sold part of it to third persons, without the knowledge or
approval of their co-owners, at prices ranging from $1,200 to $1,500
per acre, upon the understanding that the interests purchased
were to be turned over to the corporation under the agreement
mentioned. When the agreement was about to be executed such
purchasers appeared ready and willing to convey their interests to
the corporation according to its terms, and it was thereupon car-
ried out. One of said purchasers subsequently claimed that he had
been induced to purchase at $1,325 per acre by the representation
that the land cost $1,300. *Held,* that the fraud, if any, was per-
sonal to the complaining purchaser, and was perpetrated by his
vendors alone and not in conspiracy with the other owners, and
that a recovery therefor could not be had in an action to enforce
corporate rights.

3. After the organization of the corporation in such case a third per-
son purchased shares of stock, the representation being made as
an inducement that the land "had been syndicated at a cost to
the corporation of $1,500 per acre." *Held* that, even if the repre-
sentation were false, no cause of action in favor of the corporation
arose by reason thereof.

Spaulding and another vs. North Milwaukee Town Site Co. and others.

4. Although it is not forbidden for directors of a corporation to sell their property to it, they owe it the duty not merely of full disclosure of all material facts, but diligent and faithful endeavor to promote its interests.

5. Two of the seven directors of a corporation, in whose name the title to a tract of land containing 8.09 acres stood, offered it to the corporation at $1,100 per acre, representing that such price was an advance of $100 per acre or ten per cent. over the price paid, and the offer was unanimously accepted. The value of the land exceeded the price paid, but it was not explained that the land had been purchased as six and one-half acres for $6,540, nor was it disclosed that two other directors, who were active real-estate men and better versed in values than the remaining three directors, were also interested in the land. *Held*, that the corporation might recover back not only the undisclosed profits but also the ten per cent. profit which was not concealed.

6. In an action in the name of certain stockholders to enforce the right of the corporation to recover back such profits, it appeared that the corporation had been dissolved; that the holders of nearly nine tenths of the stock had joined in the liquidation of the corporation and division of its assets, and had surrendered their stock and released any claim or right to be reimbursed for their share of the moneys obtained by defendants from the corporation; that plaintiffs were indebted to the corporation for assessments on their stock; and that the other holders of the stock which had not been surrendered were not before the court. *Held*, that the recovery should be in the name of the corporation, as trustee for the plaintiffs and the other holders of unsurrendered stock, to be paid over to them or credited upon their indebtedness to the corporation.

7. The appointment of a receiver for the corporation in such case was not necessary.

8. All the directors of a corporation who participated in obtaining money from it in derogation of their duties are liable jointly and severally for the entire amount out of which the corporation was defrauded, and not each director individually for the share realized by him.

APPEALS from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Reversed.*

In this case the active defendants are *Willis A. Meyer* and *Otto Finck*, together, as the firm of Meyer & Finck; *Charles A. Maynard* and *A. D. Agnew*, together, as the firm of May-

nard & Agnew; and *Win J. Morgan.* They will be designated as "the defendants" hereinafter. The *North Milwaukee Town Site Company* will be designated as "the corporation." Momsen is not a party to the appeal, the judgment dismissing the complaint as to him not being complained of.

The overwhelming preponderance of the evidence establishes, though in many respects the court found otherwise, that the defendants on October 19, 1892, consummated purchase of the two tracts of land from Spuhl and Wasserburger in the name of Meyer & Finck, but owned by all of them in common, as follows: Meyer & Finck, one half, Maynard & Agnew, one fourth, and *Morgan* one fourth; that there was great excitement and activity in real estate in the locality at the time; that they purchased it for purposes of speculation and resale; that they considered various methods of disposal, either by resale in bulk, by platting and offering individual lots for sale, or by "syndicating." They finally decided on the latter plan, and decided to organize a corporation as a method of disposing of the shares to others, and decided to fix the value of the property for the purposes of capitalization at $1,500 per acre, each to contribute his undivided share at that price; it having originally cost them $900 and $1,000 per acre for the respective tracts. Meanwhile, and before the corporation was organized, Meyer & Finck, without the knowledge or approval of the other defendants, sold portions of their interest to some half dozen persons at various prices, upon the understanding that the shares so sold were, when the property was turned over to the corporation, to be compensated by stock at the rate of $1,500 per acre. These sales were made at prices rang'ng from $1,200 to $1,500 per acre. The plaintiff *Spaulding* purchased from the defendants Meyer & Finck an undivided one-sixteenth, for which it was agreed he was to receive sixty-two and one-half shares, fifty per cent. paid, of the

stock of the new corporation, which should be one sixteenth of its total stock. The corporation was formed, and the real estate conveyed to it at the rate of $1,500 per acre (which did not exceed its fair value), in accordance with a resolution of the board of directors,— amounting to $92,632.50, of which $45,275 was secured by mortgage, and the rest of the price satisfied by the defendants. The method of bookkeeping pursued was by charging the cash account with fifty per cent. of the amount of each share of stock (total $50,000), and crediting the cash account with the purchase price of the land above said mortgages, or $47,357.50, leaving in treasury $2,642.50.

Some three months after the corporation had been organized, the defendants Maynard & Agnew sold thirty-four shares of their stock to the plaintiff *Bishop*, representing to him that the land of the corporation had been "syndicated" to it at $1,500 per acre. No representations are proved to have been made to any of the original subscribers for stock except *Spaulding*, inconsistent with the facts as they exist, and no others complain of the transaction, but have all, with full knowledge of the facts, settled, surrendered their stock, and received their share of the company's real estate in severalty. The plaintiff *Spaulding* claims that he was induced to make his purchase from Meyer & Finck by their assertion to him that the land had cost them $1,300 per acre, and that they would sell one sixteenth to him for $25 advance, or $1,325 per acre, preliminary to incorporating. This is strenuously denied, but the findings are in accordance with the plaintiff's statement. No knowledge of this transaction is brought home to the other defendants, either as to Meyer & Finck's purpose to sell, the price paid, or any representations made, nor did they in any way share in the proceeds of such sale.

*Differt tract:* Shortly after the organization of the corporation, the defendants other than Momsen purchased in the

name of Meyer & Finck a tract of land of one Differt at the price, as fixed in negotiation, of $1,000 per acre. He, however, declined to submit to a survey, and insisted that his statement of the quantity of the land be taken, which was acceded to, and he paid on the basis of about six and one-half acres, viz. $6,540. At that time four of the defendants were members of the board of directors of the defendant corporation. After this purchase Meyer & Finck submitted to the plaintiff *Spaulding*, who was engineer for the company, the advisability of the corporation buying this tract, to add to what it already had; represented that it cost them $1,000 per acre, and that they would sell it to the corporation for $1,100 per acre, although they had received higher offers. The other directors, upon a favorable report by the plaintiff, made after examining the land, approved the purchase from Meyer & Finck, and it was accordingly made; but meanwhile, a survey having been made by the defendants, it was found that the property contained 8.09 acres, and they accordingly received from the corporation $8,900 for it. The fact of Meyer & Finck's ownership, and of their profit of $100 per acre, was disclosed, but the discrepancy in quantity was not, nor the interest of the other defendants. There is no evidence to establish that the defendants had made the survey and ascertained the discrepancy as to area at the time of making the representations to *Spaulding*, though they had at the time of the resolution for its purchase. If allowed ten per cent. advance on the cost to them, the defendants still made a profit of $1,706.

While substantially all of the original subscribers to stock are still owners to some extent, the capital stock has been very largely sold and transferred, so that their proportions are very different, and a large share of the capital stock is held by those who are not incorporators or original subscribers, with no evidence as to price paid.

After the incorporation the property was platted and

thrown upon the market in lots, and considerable sales were made at prices in the neighborhood of $4,000 per acre up to the time of the panic, when sales practically ceased. In February, 1895, after calls, additional to the original fifty per cent., amounting to twenty-seven per cent., had been made and mainly paid, the corporation was in straitened circumstances, owing a considerable amount of interest on mortgages which contained options giving the privilege of declaring the whole principal due for nonpayment of interest, and for moneys borrowed to pay previous instalments of interest, aggregating apparently about $6,500. At that time the plaintiff, with some other stockholders, had agitated the question of the defendants' liability to account for profits made on the Spuhl and Wasserburger tracts, which was resisted by them, they claiming that they were the owners of the land and had sold without misrepresentation to the corporation and were entitled to their profits. The facts were fully set forth before a meeting of the stockholders, which had been called at the instance of plaintiffs for the purpose of devising means to carry the corporation without further calls on the stockholders. At that meeting, held February 14, 1895, a stockholder offered a resolution proposing to these defendants that if they would carry the corporation over the next year, protecting it against defaults by the loan of their credit, such financial service should be accepted in full satisfaction of any claims the corporation might have against them by reason of the making of such profits. This resolution was adopted by a reasonably close vote, requiring the vote of the stock represented by these defendants to make a majority. The proposition was accepted by the defendants, and carried out by them. At a directors' meeting in July the defendant *Finch*, who was treasurer, reported that he had paid certain of the pressing liabilities, which were among those the defendants were to take care of; but the directors might have inferred

from the financial condition of the corporation that such payment had been accomplished by the defendants in performance of their agreement. A resolution was offered to ratify that action, which, according to the minutes of the meeting, was carried unanimously. Plaintiff *Spaulding* testifies that he did not vote in favor of it, but remained silent, and that he supposed the report referred to old indebtedness which the treasurer ought to pay in any event.

In November, 1895, a proposition was made to disband the corporation and divide its remaining assets, including an assessment of twenty-three per cent. upon the capital stock to bring it up to par, among the stockholders. Plans of division were made, and in 1896 a division was made; lots and land contracts being transferred to individual stockholders, and their stock surrendered in payment. Neither of the plaintiffs has acted under that resolution, and neither surrendered his stock nor received a share of the property; but all of the other original subscribers and all the other stockholders, except the holders of twelve shares, have done so. The corporation has been legally terminated, and its affairs are now being wound up by the directors as administrators.

The trial court rendered judgment against the several defendants, except Momsen, for his proportionate share of $34,275 profit made by them on the original tracts, and of $2,359 profit on the Differt tract, with interest from February 16, 1893. The judgment also directed appointment of a receiver of all the property of the corporation, with power to enforce collection of the amounts adjudged. The complaint was dismissed as to Momsen. The plaintiffs appeal, complaining that the recovery should have been for the whole amount against all the defendants except Momsen, jointly and severally. The defendant corporation appeals from that part of the judgment directing a receiver of its property, and the individual defendants, except Momsen, appeal separately from the whole judgment.

Spaulding and another vs. North Milwaukee Town Site Co. and others.

*W. J. Turner* and *Lynn S. Pease,* for the plaintiffs.

For the defendant *North Milwaukee Town Site Company* the cause was submitted on the brief of *Quarles, Spence & Quarles.*

For the other defendants there was a brief by *Timlin & Glicksman,* and oral argument by *W. H. Timlin.*

The following opinion was filed February 27, 1900:

Dodge, J.    The proposition of law with which the judgment appealed from seems most nearly consistent is that if the owners create a corporation and turn over their property to it at a price exceeding its cost to them, they may be held to account to the corporation for the difference between such cost and the price to the corporation.  On no narrower rule could be predicated liability against defendants *Morgan, Maynard,* and *Agnew,* who were wholly innocent, not only of misrepresentation, but of knowledge that any subscriber was in ignorance of any facts.  Even on this proposition, however, the judgment is inconsistent; for the plaintiff *Spaulding* and those whom he designates as similarly situated, namely, those who purchased shares in the real estate from Meyer & Finck at prices less than $1,500 per acre, for the purpose of incorporating at that figure, are exempted from its application, and not only held to no liability for the profits so made by them, but given a share of the mulct imposed on the defendants, which included the very profits gained by *Spaulding.*  Of the $17,137.50 so-called profits adjudged against Meyer & Finck, $3,906.25 was not received by them at all, but was received by plaintiff *Spaulding* and "those similarly situated;" yet Meyer & Finck are required to pay that in, and these profit-sharing plaintiffs are permitted to make profit twice from the same acts which the court condemns in the defendants.  Such result shocks every principle of equity and justice.  We need not, however, attempt to unravel the tangle of reasoning which has led to that result; for the proposition of law above stated is with-

out support in the authorities, and the facts established present a situation very different from that outlined by the findings and assumed by the judgment. We consider first the original transaction with reference to the Wasserburger and Spuhl tracts.

The liability of promoters of corporations is predicated on fraud, an essential element of which is deceit. *Franey v. Warner*, 96 Wis. 222; *Milwaukee C. S. Co. v. Dexter*, 99 Wis. 214. It is not enough that the corporation receives property at a higher price than it cost the promoters, or at a price above its fair market value, to give to the corporation a right to rescind or to recover back profits made. *Whitehill v. Jacobs*, 75 Wis. 474; *Milwaukee C. S. Co. v. Dexter*, *supra*. It must have been deceived and misled into paying such price. But the corporation as an entity cannot be deceived, save as some of the individuals composing it are. True, the acts and conduct which may constitute actionable fraud in promoters differ from that which would be necessary in other relations; for they owe *uberrima fides* to the corporation they create, and will often be held bound to speak under circumstances which would permit another to be silent. There must, however, be actual misleading of some of their associates, either by their affirmative words or acts or by their silence, and, if the latter, under such circumstances that they may reasonably apprehend that such associates may otherwise act upon a wrong assumption or understanding. The rule is stringent that, in dealing with a corporation which they organize, promoters must make full disclosure and the transaction must be open and free from misleading concealments; but mere silence cannot be misleading to one otherwise fully informed. The decisions in this court are numerous and all speak the same principles. *Pittsburg M. Co. v. Spooner*, 74 Wis. 307; *Whitehill v. Jacobs*, *supra*; *Fountain Spring P. Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, *supra*; *Hebgen v. Koeffler*, 97 Wis. 313; *Limited I.*

Spaulding and another vs. North Milwaukee Town Site Co. and others.

*Asso. v. Glendale I. Asso.* 99 Wis. 54; *Milwaukee C. S. Co. v. Dexter, supra; First Ave. L. Co. v. Hildebrand,* 103 Wis. 530; *Zinc Carbonate Co. v. First Nat. Bank,* 103 Wis. 125; *Jenkins v. Bradley,* 104 Wis. 540.

Applying these considerations to the case in hand, we find that the defendants entered into an agreement among themselves to organize this corporation and convey to it this land, which they already owned, at $1,500 per acre. That agreement was perfectly valid, legitimate, and fair, for each knew all that any of them did. After this agreement, and when it was about to be executed, the plaintiff and four others appeared, having portions of Meyer & Finck's share, which they were ready and willing to convey to the corporation on the terms of the agreement already existing between the defendants. How they acquired their interests, at what prices, or with what information, were wholly unknown to the defendants *Morgan, Maynard,* and *Agnew,* who had no facts or circumstances to suggest to them that such subscribers could be misled or confirmed in any error by their silence. It is plain that no duty of explanation or information could thus be cast on these three defendants, and as they were guilty of no misstatement or misinformation, and as none of the subscribers were contributing anything to the corporation except shares in the land, obviously it cannot be said that they deceived, even in the legal sense, any of their associates or the corporation. They had no reason to suppose that Meyer & Finck had been guilty of any fraud. These three defendants neither did nor refrained from doing anything which could mislead any of their associates, nor did they receive any of the profits resulting from the dealings of Meyer & Finck. No liability, therefore, can arise against them either for injury to the corporation or for profits to themselves, and no recovery can be had against them by reason of the original incorporation and the conveyance of the Spuhl and Wasserburger tracts.

Turning now to the transaction of Meyer & Finck with the plaintiff *Spaulding*, we find them, some two weeks before the incorporation, proposing to sell him an interest in land already owned, *and to sell at a profit*. In this there was, of course, nothing of the idea which underlies the promoter's liability, namely, assuming to join with others in a mutual enterprise, and to act for the association, so that it had a right to rely on their fidelity to the joint interests. It was a proposition for bargain·and sale. This plaintiff then examined the land, and agreed to purchase one sixteenth at the price named. Thus far, of course, there was nothing to impose on Meyer & Finck any liability, save that which rests on every vendor who is guilty of direct fraud. The plaintiff, however, knew and understood that they proposed to turn the property, including his sixteenth, over to a corporation, and he knew it was to be so turned over, not at what it cost Meyer & Finck, nor at the price he paid for his interest, but at a higher price, viz. $1,500 per acre. (His admissions make perfectly certain his knowledge of this corporate price, although he attempted to deny such knowledge.) If he considered that that corporate price was an assertion to the corporation that the land was to be bought for it by Meyer & Finck at that sum, or an assertion that none of the promoters were to receive any profit therefrom, so as to constitute a fraud on the corporation, he clearly made himself a party to such fraud. He was in the position, not of the innocent subscriber to stock, relying on equality of all, but one of a conspiracy to defraud it, and should be a defendant, like each of the others, for the whole amount of the profits fraudulently extracted from the corporation. Upon that view of the situation, he is not a fit plaintiff to champion in a court of equity the rights of innocent subscribers who relied on the price named in the resolution of purchase adopted at the first meeting of directors. We do not, however, think this a fair statement of his position, nor of that

of any of the other subscribers. They all, except perhaps Maxwell, knew that there was a nominal profit being made by themselves. (Maxwell says he gave no thought to that question, and was not led to believe that the land was to be purchased by Meyer & Finck for the corporation, or that it cost them $1,500 per acre.)

It is clear, therefore, that whatever there was of fraud, deceit, or misleading did not relate to the incorporation or the transfer of the land to it. None of the subscribers were induced to believe that Meyer & Finck or any of the officers were to buy the land *for* the corporation at $1,500 per acre, or that such was the price which had been paid for it by them, or that they were to make no profit out of it. All except Maxwell were making profit, and each should have assumed that the others were. The situation is, in principle, even on plaintiffs' own showing, like that presented in *Getty v. Devlin*, 54 N. Y. 403, where part of the subscribers had been defrauded into an associated purchase of land at $125,000, and all agreed upon turning it over to a corporation organized by themselves, at $1,000,000. The corporation was not defrauded and had no right of action, but the several purchasers were held entitled to recover in their own right the amounts of profit made out of them in their original purchase, not the profits resulting from the incorporation. The fraud, if any, proved in this case was personal to the plaintiff, perpetrated by Meyer & Finck alone, and not in conspiracy with the other defendants. The right arising therefrom is in no sense to the corporation, but to the plaintiff *Spaulding*, and must be enforced in some one of the four forms of action described in *Franey v. Warner*, 96 Wis. 222. It, however, is not recoverable in this action, brought as it is to enforce corporate rights. *Jenkins v. Bradley*, 104 Wis. 540.

The transaction had by the other plaintiff, *Bishop*, is even more remote from the act of incorporation. Three months

after the company had been organized and doing business, he purchased from Maynard & Agnew thirty-four shares of stock at par, and the only representation found by the court to have been made as an inducement to such purchase was that the land "had been syndicated at a cost to the corporation of $1,500 per acre." That representation was strictly true, but, even if false, no cause of action arises to the corporation from a fraudulent sale of shares by one of its stockholders, which is in no wise connected with the original organization.

All the other subscribers to the incorporation concede that they were not defrauded or deceived, and have assented to the retention by defendants of the price agreed on for the two original tracts of land, and, by entering into the scheme for dissolution of the corporation, have knowingly and voluntarily released any claims otherwise maintainable.

We are constrained to hold that none of those associated in organizing this corporation were deceived or misled with reference thereto, or with reference to the sale of the property to it by the defendants or any of them, and consequently that no deception was practiced upon the corporation to give it either a right of rescission or a right to reclaim any part of the price paid for the Spuhl and Wasserburger tracts.

The sale of the Differt tract by these defendants to the corporation some three months after its organization has a wholly different aspect. That transaction was distinctly a corporate one. These defendants constituted a majority of the board of directors, and were therefore both buyers and sellers. They were then in the position of trustees, and owed to the corporation the duty of the very highest good faith,— not merely full disclosure of all material facts, but diligent and faithful endeavor to promote its interest,— though it was not forbidden them to sell their property to the corporation, provided the transaction was in every way

open and fair. *Franey v. Warner*, 96 Wis. 236; *Milwaukee C. S. Co. v. Dexter*, 99 Wis. 214. Nothing short of that high good faith and full disclosure can, however, justify them in making and retaining profits out of such sale. The salient facts are that it was disclosed that Meyer & Finck owned the tract, but not that the other defendants were interested with them. It was represented that the offer to the company at $1,100 per acre was an advance of $100 per acre or ten per cent. over the price paid, but it was not explained that it had been purchased as six and one-half acres for $6,540, while it was being sold as 8.09 acres (its true dimensions) for $8,900. If, therefore, defendants were allowed to make the profit of ten per cent. which the plaintiff was informed that the price of $8,900 included, they would still be in receipt of $1,706 further profit secretly made and as the result of representations so misleading as to be false. That amount the corporation would at once have been entitled to recover.

More difficult is the question of the right to recover the $654 profits, which were not concealed, but openly claimed by Meyer & Finck by reason of the market value of the land, which is quite well shown to have considerably exceeded $1,100 per acre at that time. At the date of the purchase the board of directors, who voted unanimously to make it, was composed of four of the defendants, *Meyer, Finck, Morgan,* and *Agnew,* and three others, all present. No one can tell to what extent the conduct of the three disinterested directors was affected by their reliance upon the judgment of *Morgan* and *Agnew,* whom they had a right to suppose free from any adverse interests, and who were active real-estate men and better versed in values than the nondefendant directors, except perhaps Newton. It may well be that the other directors would not have consented to this price had they known that *Morgan* and *Agnew* were interested and their judgment perhaps biased by that fact. The fidelity

which directors owe to their colleagues and to their constituents required disclosure of such interest. They must have known that the others were likely to act upon an assumption contrary to the fact, for the resolution for purchase itself declared the ownership of Meyer & Finck, thus impliedly denying any interest in any one else. We conclude that this $654 of profit also was paid under such circumstances that the corporation could recover it back, thus making a total improper profit on the Differt-tract purchase of $2,360 (or $2,359, as the findings have it), for which the corporation had a right of action which plaintiffs may enforce here so far as they and others in like situation are interested, the corporation having refused to sue on their demand.

Defendants lay great stress upon a resolution releasing them from all liability in connection with purchase of the land, in consideration of certain services to be rendered. Without going into the question of the manner in which this resolution was adopted, or the conduct then or subsequently of these plaintiffs, from which the court below found that they were neither estopped nor guilty of laches, it suffices to say that most careful examination of the corporate proceedings and of the testimony fails to disclose that the Differt-tract transaction was at all involved in the consideration or adoption of that resolution, or had come to the notice of any of those who supported it. No reference by any speaker was made to that transaction, and the whole proceedings indicate that the sole subject of debate or compromise was the profit made on the Wasserburger and Spuhl tracts, which we have already disposed of on other grounds. We agree with the court below that no estoppel or laches is established to preclude plaintiffs' recovery for the profits realized by defendants on the Differt tract.

It appearing then that the corporation as such would be entitled to recover from the defendants the sum of $2,359,

with interest from February 15, 1893, we are met by the consideration that all of the stockholders, except the plaintiffs and other holders of twelve shares, settled, accepted satisfaction for their stock, and released any claim or right to be reimbursed for their share of the moneys obtained by defendants from the corporation, and the question is presented of the proper form of the judgment. If this were a direct proceeding by the corporation, and the recovery were had in an action at law, there might be no escape from the entry of a money judgment for the full amount, but this is an equitable action brought by two of the suffering stockholders to enforce their ultimate rights through the medium of the corporation as a trustee for them. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 256. The great advantage of equitable procedure over an action at law consists in the elasticity of the relief it may accord, and the ability to adjust and frame its decrees so as to accomplish complete remedy to all litigants, without undue or unnecessary burden to any. In the present case the corporation, being dissolved, has no use for money, except for distribution as a trustee to its stockholders. It would be a reproach to equity jurisprudence if we could not avoid the absurdity of compelling these defendants to pay over to the corporation moneys which as their trustee it must at once return to them, either in their own right as stockholders, or in the right of others who by settlement have released their claims. No such absurdity is necessary, however. A very similar situation was presented in *Jenkins v. Bradley,* 104 Wis. 540, and was successfully met. The proposition was recognized that, while the action is ostensibly to recover what is due the corporation, yet when all parties are before the court the forms may be brushed aside, and the rights of those individual beneficiaries, who would be entitled to the money after it was recovered by the corporation, be protected and enforced. There, after establishing such right of recovery in the corporation, and find-

Spaulding and another vs. North Milwaukee Town Site Co. and others.

ing that certain of the stockholder beneficiaries had settled and released their rights, the court computed the amount which, paid from the defendants to the plaintiffs, would accomplish the same ultimate result as the payment of the whole recovery into the corporate treasury and its distribution out again.

The same thing can be done here. The amount to which the corporation would be entitled is $2,359, with interest from February 15, 1893. The plaintiff *Spaulding* is the holder of $\frac{1}{16}$ of the total stock of the corporation, the plaintiff *Bishop* is the holder of $\frac{34}{1000}$, and the unnamed stockholders who have not settled are the holders of $\frac{12}{1000}$, or a total of $\frac{1085}{10000}$. The defendants, therefore, should pay to the plaintiff *Spaulding* $147.44, to the plaintiff *Bishop* $80.20, and to the holders of the twelve shares of stock $28.30; each of said sums to draw interest from February 15, 1893, to the time of the entry of judgment. This being done, the plaintiffs will have received all to which they would be entitled through the machinery of collection of the whole amount by the corporation and distribution; and, if there were nothing more to the situation, a money judgment for this amount, such as was ordered in *Jenkins v. Bradley*, would be proper. In the present case, however, we have the fact that the holders of the twelve shares of stock are not disclosed, so that no judgment can be rendered in their favor. We also have the fact that both *Bishop* and *Spaulding* are indebted to the corporation for assessments on their capital stock. We conclude, therefore, that the rights of all parties can be better protected by ordering a recovery in the name of the corporation as trustee for the two plaintiffs and such other holders of capital stock as have not yet joined in the liquidation of the corporation and division of its assets nor surrendered their stock; such corporation, as trustee, however, to apply the recovery, in the proportions above pointed out, to the beneficiaries above named, either by crediting it

Spaulding and another vs. North Milwaukee Town Site Co. and others.

upon any indebtedness of those beneficiaries to the corporation or by paying it over to them.

Considering the appeal of the defendant corporation from that part of the judgment which directs a receiver to be appointed, it is apparent, in the light of the decision reached on the principal questions, that no receiver can be necessary; unless, indeed, the administrators of the corporation shall hereafter be derelict in their obedience to the judgment which may be entered in this action, and the judgment appealed from must in that respect be reversed.

The plaintiffs also appeal from the judgment for the reason that it holds the defendants each to an individual liability for only the share of the profits realized by him. This is erroneous, under the rule laid down in *Zinc Carbonate Co. v. First Nat. Bank*, 103 Wis. 125. They were all participants in the plan of extorting moneys from this corporation upon the sale of the Differt tract, in derogation of the duties of their fiduciary capacity, and their liability is joint and several. The judgment to be entered will be against each and all of the defendants other than the corporation and Momsen.

*By the Court.*— Judgment reversed on each of the several appeals, and cause remanded with directions to enter judgment in accordance with this opinion; appellants *Finck, Meyer, Morgan, Maynard*, and *Agnew* to be entitled to but one joint bill of costs.

The plaintiffs moved for a rehearing.

For the motion there was a brief by *W. J. Turner* and *Lynn S. Pease*, and in opposition a brief by *Timlin, Glicksman & Conway*.

The motion was denied April 27, 1900.