LIMITED INVESTMENT ASSOCIATION, Respondent, vs. GLENDALE INVESTMENT ASSOCIATION and another, imp., Appellants.

*March 2 — March 22, 1898.*

*Vendor and purchaser: Fraud in sale: Election of remedies: Action for money had and received: Review on appeal: Instructions.*

1. The agent of the vendor of land, who had acquired the right to buy such land at a certain price, and who was also one of the promoters of a corporation organized to buy such land, sold the same to such corporation at a price which he represented to be the price to be paid to the vendor, but which in fact included a large commission to be paid to himself. The vendor, with full knowledge of the facts, conveyed the land to such agent and he to the corporation; and the vendor, on receiving payment for the land, paid such agent his commission. *Held*, that the transaction was a fraud upon the corporation, and that it might exercise an option, on tendering back the property received, to rescind the contract and compel the vendor to refund the consideration paid by it. *Fountain Spring Park Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, 96 Wis. 222; and *Hebgen v. Koeffler*, 97 Wis. 313, followed.

2. Where, in such a case, the corporation elected to rescind the contract and sue for the consideration paid, instead of suing for damages for the fraud, it was bound by such election.

3. An action to recover the consideration paid, in such a case, is really one on an implied promise to pay back money had and received, the basis of which is the loss to the plaintiff and the consequent enrichment of the defendant; and where, in such an action against the vendor and his agent, it appears that the money was paid to the vendor for his sole use, and that the only benefit the agent derived from it was his commission paid by the vendor, such agent cannot be held liable, but the plaintiff must look to the party to whom it paid the money.

4. Although the complaint in such an action charges a conspiracy between the defendants to defraud the plaintiff, yet, where the special verdict substantially covers the facts necessarily involved in the case, a finding as to whether such a conspiracy existed is unnecessary, that being but a legal conclusion from the facts found.

5. The objection that there was no finding as to such a conspiracy will not avail on appeal, where the party objecting did not ask for such a finding, nor save an exception to the failure of the court to submit that question.

Limited Investment Association vs. Glendale Investment Association.

6. An instruction that, to enable the jury to answer the questions sub-
    mitted to them correctly, they might take into consideration the
    allegations of the complaint that there was an agreement between
    the defendants to defraud the plaintiff, is not objectionable, where
    it is evident, taking it in connection with the whole charge, that
    what the court intended was that they might do so to determine
    in what manner it was charged that such agreement had been
    made.

APPEALS from a judgment of the superior court of Mil-
waukee county: R. N. AUSTIN, Judge. *Affirmed on one ap-
peal; reversed on the other.*

Prior to 1892, the *Glendale Investment Association* was
the owner of a certain twenty-acre tract of land in Milwau-
kee county. John H. Meyers was its secretary, a director,
and had practical management and control of its affairs.
The defendant Clayton had desk room in Meyers' office, and
at different times acted as agent for him and for the com-
panies in which he was interested, in selling land on com-
mission. Some time in July, 1892, Clayton had a talk with
Meyers about getting the sale of this twenty-acre tract on
commission. The matter was submitted to the directors of
the *Glendale Investment Association,* and authority given him
to sell the land at $2,700 per acre; Clayton to have a com-
mission of $200 per acre. Some time in September, Clayton
arranged with defendant *Griffin* and one Pollock to organ-
ize a corporation to purchase this land, and he agreed to
divide his commission with them. Meyers was informed of
the negotiations as they progressed. During September,
*Griffin* and Pollock secured subscriptions to the stock of the
corporation to be formed; and on September 28th a meeting
was held, the plaintiff corporation was duly organized, and
Clayton and *Griffin* were elected directors and officers of the
company, Clayton being secretary and *Griffin* treasurer.
They were each subscribers to five shares of the capital
stock, but it was understood that Clayton need not take the

stock he had subscribed for, and nothing was ever paid by him. On the same day, the corporation appointed Clayton and its president a committee to purchase the land at the price mentioned, but Clayton conducted the trade by himself. Clayton told Meyers the corporation had been formed to purchase the land at the price stated, and that he was authorized to purchase it for them, and asked him to make out the contract.

On October 1st, when the contract was presented to Clayton to execute, he first learned that it had been executed in his name. He then executed the same, duly assigned it to the corporation, and the first payment was made by plaintiff. While the stock subscriptions were being received, the most of the subscribers were informed that they were all going in on equal terms. The price of the land was represented to be as named in the contract, and no disclosure was made at the meeting of the subscribers that a commission was to be paid. Payments were made by the plaintiff upon the contract, from time to time, until the sum of $10,292.54 had been paid and credited on the books of the *Glendale Company* to the plaintiff company. The commission, amounting to $4,000, was paid to Clayton by the *Glendale Company*, and by him divided with *Griffin*.

In June, 1894, the plaintiff first learned of the transaction regarding commissions. A meeting of the association was called, and it was then decided to take steps to rescind the contract. Proper proceedings were then taken, and a tender of a deed and an assignment of the contract was made to Clayton and the *Glendale Company*, and a demand for the money paid was made and refused. This action was then commenced against the *Glendale Investment Association*, Clayton, and *Griffin* to recover the money paid on the contract.

The complaint sets out the facts substantially as stated, and the prayer for relief is for the recovery from all of the

Limited Investment Association vs. Glendale Investment Association.

defendants of the money so paid. The action was tried before a jury, who rendered a special verdict, upon which judgment was rendered for the plaintiff, and against all of the defendants, for the recovery of the amount plaintiff had paid on the contract, with interest. Defendants *Griffin* and *Glendale Investment Association* bring separate appeals.

For the appellants there were separate briefs by *Austin & Fehr*, attorneys for the *Glendale Investment Association*, and *Timlin & Glicksman*, attorneys for the defendant *Griffin*, and oral argument by *W. H. Austin*.

For the respondent there was a brief by *Hoyt, Ogden & Olwell*, and oral argument by *F. M. Hoyt*. To the point that, where a vendor negotiates a sale of property through his agent, who is at the same time the agent of the purchaser, and such vendor pays a secret commission to the agent for making the sale, the purchaser, on learning the facts, may tender back what he has received and recover back from the vendor and the agent, as joint tortfeasors, the money paid by him, they cited Mechem, Agency, §§ 797, 798; *Meyer v. Hanchett*, 39 Wis. 419; 1 Am. & Eng. Ency. of Law (2d ed.), 1178; *McDoel v. Ohio Valley Imp. & Cont. Co.* 36 S. W. Rep. (Ky.), 175; *Panama & S. P. Tel. Co. v. India Rubber, G. P. & T. W. Co.* L. R. 10 Ch. App. 515; *Atwool v. Merryweather*, L. R. 5 Eq. 464, note; *Munson v. S., G. & C. R. Co.* 103 N. Y. 74.

BARDEEN, J. The law bearing upon the rights, duties, and obligations of promoters of corporations has been so fully covered and exhaustively discussed in the recent cases of *Fountain Spring Park Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, 96 Wis. 222; *Hebgen v. Koeffler*, 97 Wis. 313, as to render it unnecessary at this time to do more than to refer to those cases.

In this case, the facts as found by the jury, and which are fully supported by the evidence, are substantially that the

*Glendale Investment Association* was the owner of a certain tract of land, which it authorized Clayton to sell for $2,700 per acre, and upon which it was to pay a commission of $200 per acre. Clayton, with full knowledge of the company, associated himself with *Griffin* and Pollock in the capacity of promoters, for the purpose of organizing a corporation to purchase this land. The plaintiff corporation was formed, Clayton and *Griffin* were elected directors and officers, and the land was purchased at $2,700 per acre; *Griffin* and Clayton carefully withholding any information from most of the subscribers for stock that they were to receive a rebate of $200 per acre for their mutual benefit. The defendant *Glendale Investment Association*, knowing of the organization and purpose of the corporation, and of the relation Clayton sustained to it, helped on the deal, but, in order to clear its skirts, makes its contract to Clayton, and advises the assignment of it to the corporation. It then receives the money of the corporation, and forthwith returns to Clayton some $4,000 in alleged commissions. That this was a fraud upon plaintiff seems too clear for argument. As soon as these facts came to the surface, plaintiff tendered back what it received, and demanded its money. Upon the refusal to pay, plaintiff made its election to recover back the consideration paid. It might have chosen other remedies, as are pointed out in the *Franey Case;* but, having elected to stand upon a rescission of the contract, it is bound thereby.

An inspection of the complaint and the proceedings upon the trial lead at once to the conclusion that this action is based upon implied assumpsit, and is really an action for money had and received. Such being the case, it becomes important to inquire whether the recovery against the defendant *Griffin* can be maintained. The rule is quite elementary that, to enable a person to maintain an action for money had and received, it is necessary for him to establish that the persons sought to be charged have received money

belonging to him or to which he is entitled. That is the fundamental fact upon which the right of action depends. *National Trust Co. v. Gleason,* 77 N. Y. 400. The purpose of such an action is not to recover damages, but to make the party disgorge; and the recovery must necessarily be limited by the party's enrichment from the alleged transaction. Evidence of crooked dealing or fraudulent practices is only important in determining the plaintiff's right to secure the fund. While it may be admitted that all the defendants were joint tortfeasors, to the extent that they would be jointly liable for all *damages* the plaintiff has sustained by reason of their fraud, yet, when it is sought to render them liable on *quasi*-contract, a different rule prevails. The basis of recovery in the latter case being a loss on one side and a consequent enrichment on the other, liability can only exist in so far as these elements concur. There is no implied promise to pay damages. The promise that the law implies is that the guilty party will restore that which he has received, and which the other has shown himself entitled to. To the extent, therefore, which it is shown that the one party has suffered loss and the other gained profit, can the recovery in this form be sustained. The law does not imply a promise to pay for something the party has not received, while in the case of the tort it casts upon him an *obligation* to pay all damage done, regardless of a promise.

Applying these observations to the facts before us, we find that every dollar of the money sought to be recovered in this action was paid to the defendant *Glendale Investment Association* by the plaintiff. Not one cent was paid to *Griffin,* or came to his pocket, except as it came through the *Glendale Company* to Clayton, and then to him. The amount received by *Griffin* was but a small fraction of the money paid by plaintiff to the *Glendale Company.* Plaintiff, suing as for a rescission of its contract, and upon the im-

Limited Investment Association vs. Glendale Investment Association.

plied promise to restore that which has been taken from it, is bound to look to the one to whom it paid the money. Cases may and do occur where the money sought to be recovered was received by one for the benefit of others, and where all interested in the fund would be jointly liable. But this is not such a case. The money paid by plaintiff to the *Glendale Company* was not paid for or on behalf of *Griffin.* It was paid on the contract, and as part of the purchase money of the land conveyed. There was no contract between plaintiff and *Griffin* to rescind, and hence no implied obligation can arise between them. The entry of judgment against *Griffin* for the full amount paid on the contract by plaintiff was manifestly wrong, and must be reversed. As bearing upon the questions hereinbefore discussed, we cite *Barndt v. Frederick,* 78 Wis. 1; Keener, Quasi-Cont. 200–202; Alger, Promoters & Promotion, § 99.

Counsel for the *Glendale Investment Association* argue earnestly that the judgment as to it should be reversed, because there was no finding that there was a conspiracy or confederation among the defendants to defraud the plaintiff. Such a finding was not essential to the recovery. The special verdict, as we read it, substantially covers the *facts* necessarily involved in the case; and, if a conclusion that a conspiracy was essential to a recovery was needful, it was but a legal conclusion the court might draw from the facts found. Perhaps a better answer to this contention is found in the fact that this defendant did not request any such finding, and has failed to preserve any exception to the failure of the court to submit the question on that line, requested by the defendant *Griffin.*

The criticism of the charge of the court on this branch of the case is somewhat hypercritical. That portion to which especial exception is made is as follows: "And, to enable you to answer these questions correctly, you may take into consideration the allegation made in the complaint that

there was an agreement," etc. Read in connection with the entire charge, it is perfectly evident that what the court intended was that the jury might take the allegations of the complaint into consideration in determining in what manner it was *charged* that such an agreement or combination had been made, not that it tended in any manner to establish the fact.

We have carefully compared the charge given the jury with the requests submitted by the *Glendale Company*, and are well satisfied that the defendant has suffered no wrong. The facts proven tend to establish the justice of the conclusion arrived at, and leave the defendant without any just cause of complaint. The real basis of recovery rests upon the dealings between Clayton, the agent of said defendant, and at the same time a promoter and an officer of plaintiff, and the defendant corporation, through its secretary and general manager, Meyers. It is idle to say that this defendant or its secretary had no reason to believe that Clayton was not giving the actual purchaser the benefit of the commission allowed him. The fact is undisputed that the contract was for the full selling price of $2,700 per acre, and that the commission was not allowed to plaintiff in rebate of the contract price. It is also undisputed that the *Glendale Company* gave its checks from time to time to Clayton individually for the commission, and charged the amounts to its commission account. These facts, taken in connection with the situation and relations of the parties, speak loudly in favor of the conclusion arrived at. The true situation is fairly outlined by the verdict, and it ought not to be disturbed.

*By the Court.*— The judgment of the superior court of Milwaukee county, as to the defendant *Griffin*, is reversed; and, as to the defendant *Glendale Investment Association*, the judgment is affirmed.