GODFREY and another, Respondents, vs. SCHNECK and another, imp., Appellants.

*January 13 — February 2, 1900.*

*Principal and agent: Special agency: Scope of employment: Responsibility of principal.*

M., employed as special agent by plaintiff to sell land for $525 per acre, conceived the idea of organizing a corporation to purchase it, and to that end interested W. with him; and they agreed to convey it to the corporation for $600 per acre and to divide the profits. W. proceeded to organize the corporation, and engaged H. to assist him, H. to have one half of W.'s profits. W. and H., representing to S. that the land could be got for $600 per acre, agreed to give him a third of the difference, if S. would assist in syndicating the land at $750 per acre. W., H., and S. with others subscribed for the stock, the others not knowing of the secret profit. Pending organization the title was conveyed by plaintiff to S. subject to a mortgage given by plaintiff thereon, which S. assumed and agreed to pay. Thereafter S. conveyed to the corporation, which made like covenants as to said mortgage. The officers of the corporation discovering the true state of facts offered to rescind the transaction and tendered reconveyance to plaintiff. The mortgage not being paid, plaintiff, being threatened with suit, took it up and commenced an action to foreclose it. S. and the corporation, having been made defendants therein, set up the facts by way of counterclaim, and prayed rescission of the sale and release from liability. *Held,* that the mere authority of M. to sell did not contemplate the organization of a corporation to effectuate the purchase, and that M.'s acts in assisting in the formation thereof, in the absence of evidence or findings showing plaintiff had any actual knowledge of M.'s plans, or shared in any way in his profits, were outside the real or apparent scope of his authority, and not binding on plaintiff.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

In August, 1892, the plaintiff was the owner of a tract of land containing eighteen acres. He placed the same in the hands of one A. B. Meyers to sell at $525 per acre, Meyers to have a commission of two and one-half per cent. Meyers

conceived the plan of organizing a corporation to purchase it. To that end, he interested one Joseph Whaley with him, and it was agreed that the land should be conveyed to the corporation at $600 per acre; the latter to have one half of the difference between the cost and the price to be paid by the corporation. Whaley thereupon set out to organize the corporation, and engaged one Hinners to assist him to procure stock subscriptions, and agreed to give him one half of his profits. Whaley and Hinners represented to the defendant *F. W. Schneck* that the land could be secured at $600 per acre, and agreed with him that, if he would assist in syndicating it at $750 per acre, he should have one third of the difference. *Schneck* joined in the scheme, and subscribed for stock. Other subscriptions were obtained, and none of the subscribers knew that the land could be obtained for less than $750 per acre. After the subscriptions had been obtained, and while they were preparing to organize the corporation, Whaley represented to the subscribers that the time in which they could purchase the land at the price mentioned had about expired, so it was arranged that *Schneck* should take the title, to hold for the others until the corporation could be fully organized. This was accordingly done, Meyers securing the deed from the plaintiff. At that time the property was incumbered by the mortgage in suit, and the land was conveyed subject to it. After the deal was completed, Meyers paid Whaley $675, being his half of the profit mentioned in their agreement; and Whaley, in turn, divided with Hinners. During all this time Meyers assisted in the organization of the corporation, and was familiar with the circumstances. Neither Whaley, Hinners, nor *Schneck* paid anything on their stock, although the other subscribers supposed they were paying in like proportion with themselves. Soon after the sale the defendant corporation was organized. Several months after its organization, the officers discovered that Whaley, Hinners, and *Schneck* had made

a secret profit; and, upon suit being threatened, they settled with the company by paying over $1,500. At this time neither the officers nor *Schneck* knew of the profit made by Whaley and Hinners. In July, 1897, the officers of the corporation made investigations, and discovered the true state of facts. Thereupon the corporation offered to reconvey the land to plaintiff and to rescind the transaction. The defendants not having paid the mortgage on the land, the plaintiff was threatened with suit. To protect himself, he took up the mortgage, and is seeking to foreclose it in this action. The defendant corporation and *Schneck* set up the transactions as heretofore stated as a counterclaim, and asked for a rescission of the sale, and a discharge from any liability on the mortgage. The court found the facts as stated, but, as conclusions of law, he decided that the defendants were not entitled to the relief demanded. Judgment of foreclosure and sale was entered, from which the defendants *Schneck* and the *Blue Mound Investment Company* appeal.

For the appellants there were briefs by *Austin & Fehr*, attorneys for *Schneck*, and *Wheeler & Perry*, attorneys for *Blue Mound Investment Company*, and oral argument by *L. G. Wheeler* and *W. H. Austin*.

For the respondents there was a brief by *Edwin F. Van Vechten*, attorney, and *W. H. Timlin*, of counsel, and oral argument by *Mr. Timlin*.

BARDEEN, J. The theory upon which the defendants claim that they are entitled to relief is, that the scheme of Meyers to form a corporation, and his offer to divide profits with the promoters, was in effect a bribe to effect the sale of plaintiff's land. Meyers being the plaintiff's agent, the latter must be held responsible for his acts, and hence the transaction fails. No great amount of time or mental energy need be expended in the solution of this question. The trial court evidently proceeded upon the assumption that

Meyers was a special agent, and that his acts in assisting in the formation of the defendant corporation were outside of the scope of his employment, and therefore not binding upon plaintiff. If that assumption is correct, that ends the case, and the judgment must be affirmed. No fact is found in the evidence or findings that shows plaintiff had any actual knowledge of Meyers's plans, or shared in any way in the profits. When the land was conveyed by him, he received the purchase price of $525 per acre, less the commission he had agreed to pay. He had no part in the transactions, other than to execute his deed. No fact or circumstance is shown sufficient to charge him personally with knowledge that the promoters were committing a fraud on the corporation. We therefore come back to the original proposition, of whether the acts of Meyers were within the scope of his employment as agent to sell the plaintiff's land. There is no room to question the fact that Meyers was a special agent to sell. *Hoyer v. Ludington*, 100 Wis. 441. Such agency contemplated the securing of a purchaser for the land in the usual course of trade. Any fraud or misrepresentation made by the agent, in the scope of his agency, to effect the sale, would be binding on his principal. *Law v. Grant*, 37 Wis. 548. But can it be rightfully claimed that the mere authority to sell contemplated the organization of a corporation to purchase? Plainly not. The moment Meyers conceived this scheme, and set about carrying it into operation, he departed entirely from the real or apparent scope of his employment. He was then engaged in business of his own, and for his own profit. The fact that it eventuated in a sale of the land is not controlling. The means adopted to effectuate the sale having no direct or necessary connection with his employment, the link is missing upon which his principal's liability must be predicated. His acts were not done in the interests of his employer and for his profit, but were distinctly personal

and primarily to his own advantage. They are not, in legal contemplation, the acts of his principal, and hence the principal cannot be bound thereby. The effort to apply to this case the principles of law announced in *Alger v. Anderson*, 78 Fed. Rep. 729, must fail. The facts are in no way parallel. In that case defendant's agent corrupted plaintiff's agent by a direct bribe, in order to influence the sale. Both were acting within the scope of their agency, and the court properly condemned the transaction. Here the project of syndicating the land was perfectly legitimate and proper. It was not, however, one usually connected with the agency to sell, or necessary to its performance. And here lies the distinction. It was not unlawful to agree to convey the land to the corporation at an increased price. The fraud arose in the failure to apprise their fiduciaries of the true situation. It is not claimed that Meyers made any misrepresentations to the corporators. The height of his offending lies in the fact that he counseled and aided in the organization of the corporation upon the basis stated, and did not reveal to the corporators that he was dividing a profit with some of the promoters. He sustained no fiduciary relation to them, was not a stockholder, and was under no legal obligations to make revelation to them. The fraud on the corporation arose from the fact that Whaley, Hinners, and *Schneck* kept their intentions concealed. To hold that the plaintiff is responsible for this concealment would be carrying the so-called "promoter doctrine" beyond the limit of good sense or good law.

The conclusion of the trial court meets with our entire approval.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.