Forest Land Co. vs. Bjorkquist and another.

FOREST LAND COMPANY, Appellant, vs. BJORKQUIST and another, imp., Respondents.

*May 2 — May 21, 1901.*

*Corporations: Promoters: Fraud: Agency: Authority.*

1. Defendant B. sold a large tract of land to the plaintiff, a corporation, organized by M. for the purchase, platting, and resale of such land. Fifteen months prior to such conveyance, B., through M., had bought the land for $7,000 less than the price received from plaintiff, and authorized M. to find a purchaser for the land, his commission to be paid by the purchaser. B. did not stand in any confidential relation to plaintiff nor any of the subscribers to its capital stock. The sale to plaintiff was brought about by M., who received from plaintiff $2,000 of its stock for his services, which fact was not known to B. B., having foreclosed the purchase-money mortgage given by plaintiff, obtained a deficiency judgment thereon; and plaintiff brought an action to enjoin the enforcement of such judgment, and to have the sale set aside for fraud. *Held*, that B. did not owe plaintiff or any of the subscribers to its capital stock any duty to refrain from making said sale.

2. The mere fact that B., fifteen months prior to such conveyance, had bought the land for $7,000 less than the price for which he sold it, did not tend to impeach the transaction, especially in view of a finding that the land was then worth the full consideration recited in the deed, which was more than B. actually received.

3. In such case, the mere authority of M. to find a purchaser of the land did not contemplate the organization of a corporation to effectuate the purchase; and M.'s acts in assisting in the formation thereof, in the absence of showing that B. had any knowledge of M.'s plans, or shared in any way in his profits, were outside of the real or apparent scope of his authority and did not bind B.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

It is undisputed that in the fall of 1890 the plaintiff, through the agency of one A. B. Myers, purchased the land in question from the defendant *Bjorkquist* at the agreed price of $32,000, and paid down $16,000, of which Myers had and retained $2,000, and *Bjorkquist* $14,000, and for the balance of the purchase price the plaintiff, at the request of *Bjorkquist*, gave back a mortgage, dated October 7, 1890, for $16,000, running to the defendant *Crowns*, which was duly recorded; that, default having been made in the payment of the mortgage, October 2, 1895, *Crowns* commenced an action to foreclose the same, and March 9, 1896, took judgment on default; that there was then due on the mortgage $17,640.85; that May 31, 1897, the premises were sold on that foreclosure judgment to *Bjorkquist* for $7,500, and *Bjorkquist* thereupon took possession thereof, and July 24, 1897, a judgment for deficiency was entered in favor of *Crowns* and against the plaintiff for $11,475.56; that November 24, 1897, the plaintiff appealed to this court from that judgment for deficiency, and the same was affirmed March 22, 1898 (*Crowns v. Forest L. Co.* 99 Wis. 103); that September 21, 1897, *Crowns* commenced an action, based upon such judgment for deficiency, in the nature of a creditors' bill, to recover such deficiency from the stockholders of the plaintiff, and several of the defendants answered and put in counterclaims and cross bills, and such proceedings were had in that action that an order was entered opening such default and vacating such judgment conditionally, and allowing the question of the validity of the mortgage to be litigated; that, upon the appeal by *Crowns* from that order, the same was reversed October 11, 1898 (*Crowns v. Forest L. Co.* 100 Wis. 554); that, the *remittitur* being filed, the plaintiff moved this court for leave to prosecute its so-called

cross bill and to file a bill of review, but which motion was denied by this court February 21, 1899 (102 Wis. 97); that, as a result, this action was commenced June 12, 1899, by the plaintiff against *Bjorkquist, Crowns*, and Myers to enjoin the enforcement of such judgment for deficiency against this plaintiff so obtained by *Crowns* July 24, 1897, and also to set aside the transaction by which the plaintiff purchased the land from *Bjorkquist,* and also to recover back moneys paid by reason of the alleged frauds of *Bjorkquist* and Myers.

The defendants *Bjorkquist* and *Crowns* answered by way of admissions, denials, and counter allegations.

The issues thus joined were tried by the court, and at the close of the trial, in addition to the facts stated, the court found, in effect, that some time prior to June 4, 1889, one Carl Doerflinger, being the owner of the premises in question, had given to the defendant Myers, of the firm of West, Myers & Brewer, the agency to sell the land; that Myers offered the land for sale to *Bjorkquist*, and caused Doerflinger and *Bjorkquist* to come together and personally negotiate for the sale and purchase of the land; that June 4, 1889, such negotiations resulted in a written contract, signed by Doerflinger and wife and *Bjorkquist,* wherein and whereby *Bjorkquist* agreed to pay Doerflinger $500 down, and $9,500 on or before June 10, 1889, when *Bjorkquist* was to receive a deed and give back a mortgage of $13,000 to secure the payment of the balance of the purchase price; that Myers had no interest in such transaction, except to get compensation as such agent for securing such sale and purchase; that *Bjorkquist* paid the cash as agreed, and received his deed and gave back the mortgage as agreed; that, upon making such purchase, *Bjorkquist*, for a time, contemplated residing upon such premises; that in April, 1890, *Bjorkquist* gave to Myers the privilege of selling the premises at such price that he (*Bjorkquist*) should receive $30,000,— Myers getting his

Forest Land Co. vs. Bjorkquist and another.

commissions from the party to whom the sale should be made,— and that no other agreement was made between *Bjorkquist* and Myers in respect to such sale; that through the efforts of Myers the plaintiff was incorporated and organized in August, 1890, for the purpose of purchasing, platting, and selling the land in question; that September 15, 1890, *Bjorkquist* paid to Doerflinger the $13,000 mortgage, and the same was satisfied September 17, 1890; that about the same time the plaintiff, through the agency of Myers, agreed to purchase the land in question from *Bjorkquist*, and to pay down to him upon such purchase, in cash, $14,000, he to give a deed to the plaintiff reciting a consideration of $32,000, and take back the mortgage to *Crowns*, dated October 7, 1890, for $16,000, and the other $2,000 to be retained by Myers for effecting such purchase, in stock issued by the plaintiff; that *Bjorkquist* knew nothing about the plaintiff or its officers or stockholders, and had nothing to do about Myers's commissions, except that he conveyed the land to the plaintiff, and received from it $14,000 in cash, and the note and mortgage for $16,000, the balance of the purchase price, dated October 7, 1890; that at the time of such purchase by the plaintiff the fair market value of the premises was $32,000; that *Crowns* had no interest in the mortgage, except as trustee for *Bjorkquist;* that some of the stockholders and officers of the plaintiff company, other than Myers, knew about the time of such purchase that Myers made a profit on the purchase by the plaintiff; that the president of the plaintiff knew in July, 1897, right after the sale on foreclosure, that *Bjorkquist* only received $30,000, and that Myers received $2,000 in stock in the plaintiff corporation for making the purchase.

The court found, as conclusions of law, that the plaintiff was not entitled to any relief in this action; that the defendants *Bjorkquist* and *Crowns* were entitled to judgment dismissing the complaint as to them, with costs, and that

the defendant Myers was also entitled to judgment dismissing the complaint as to him, and ordered judgment accordingly.

From that part of the judgment so entered in favor of *Bjorkquist* and *Crowns*, the plaintiff brings this appeal.

For the appellant there were briefs by *Nath. Pereles & Sons* and *Edwin S. Mack*, and oral argument by *Mr. Mack* and *Mr. G. D. Goff*. To the point that Myers, the agent of the corporation, was pecuniarily interested in the sale as *Bjorkquist's* agent and this double agency rendered the entire transaction fraudulent, they cited Mechem, Agency, § 798; *Collins v. Case*, 23 Wis. 230; *Pickett v. School District*, 25 Wis. 551; *Shirland v. Monitor I. W. Co.* 41 Wis. 166; *Pittsburg M. Co. v. Spooner*, 74 Wis. 307; *Meyer v. Hanchett*, 39 Wis. 419, 425; *Cook v. Berlin W. M. Co.* 43 Wis. 433; *Fox v. Mackreth*, 2 Cox, 320; *S. C.* 2 Brown, Ch. 400; *Torrey v. Bank of Orleans*, 9 Paige, 649; *Gillett v. Gillett*, 9 Wis. 194; *Munson v. S., G. & C. R. Co.* 103 N. Y. 58, 74; *White v. Sherman*, 168 Ill. 589; *Harrington v. Victoria D. Co.* 3 Q. B. Div. 549.

For the respondents there was a brief by *Turner, Pease & Turner*, and oral argument by *W. J. Turner*.

CASSODAY, C. J.    The ground upon which the promoters of a corporation are accountable to it for any profits which they may receive by defrauding the corporation or from a violation of their duty as such is well understood. *Pittsburg M. Co. v. Spooner*, 74 Wis. 307; *Fountain Spring P. Co. v. Roberts*, 92 Wis. 345; *Franey v. Warner*, 96 Wis. 222; *Hebgen v. Koeffler*, 97 Wis. 313; *Limited I. Asso. v. Glendale I. Asso.* 99 Wis. 54; *First Ave. L. Co. v. Hildebrand*, 103 Wis. 530; *Spaulding v. North Milwaukee T. S. Co.* 106 Wis. 481. The same is true where the owner of the property, by agreement with such promoter, and with knowledge of the facts, aids such promoter in secretly perpetrating such fraud, and

thereby receives a portion of the profits thereof. *Id.* See, also, *Yale G. S. Co. v. Wilcox,* 64 Conn. 101; *S. C.* 25 L. R. A. 90, and note; *Atwool v. Merryweather,* L. R. 5 Eq. 464; *S. C.* 37 Law J. Ch. 35; *Phosphate S. Co. v. Hartmont,* 5 Ch. Div. 394. It is contended that, within the ruling of some of the cases cited, the judgment in this case should be reversed. Confessedly, Myers was a promoter of the plaintiff corporation. Whether he secretly retained $2,000 of the consideration recited in the deed from *Bjorkquist* to the plaintiff, or whether some of the officers and stockholders of the corporation knew that he retained that amount of the consideration on such purchase, are questions not before us on this appeal, since there is no judgment in the record in favor of Myers,— much less, any appeal from such judgment. There is no pretense that the defendant *Crowns* had any connection with the purchase of the land from Doerflinger by *Bjorkquist,* nor the sale and conveyance of the land to the plaintiff by *Bjorkquist,* except that the mortgage was taken back in his name in trust for *Bjorkquist.* The purchase of the land by *Bjorkquist* from Doerflinger was fourteen months prior to the incorporation of the plaintiff; and the findings and the evidence preclude the suggestion that such purchase was made through the agency of Myers, for the purpose thereafter of selling to the plaintiff at a profit. As indicated in the statement, Myers brought Doerflinger and *Bjorkquist* together, and they personally negotiated the terms of the transfer, which resulted in the payment by the latter of $23,000, of which sum Myers retained $500 as compensation for such agency, and the balance was finally received by Doerflinger. Myers had no interest in the land or in the purchase from Doerflinger, except to get such compensation. In the spring of 1890, ten months after such purchase, and before the question of incorporating the plaintiff company was mentioned to *Bjorkquist,* he was the absolute and sole owner of the land, subject only to his payment of the mort-

gage he had given to Doerflinger for the balance of the
purchase price. Such were the conditions existing when,
according to the findings of the court, Myers met *Bjorkquist*,
in April, 1890, and asked him for the privilege of selling the
land; and *Bjorkquist* gave him the privilege of making such
sale, on condition that he must receive $30,000 net as con-
sideration for the sale, and whatever should be paid in excess
of that sum Myers was to receive as his commission on such
sale. Myers testified that he then mentioned the proposed
incorporation of the plaintiff, and that he would have a com-
mission of $2,000 for his services in the transaction. That
is denied by *Bjorkquist*, and there is no pretense that he ever
had any dealing in respect to the sale with any representative
of the plaintiff other than Myers. *Bjorkquist* so employed
Myers simply to find a purchaser, not to collect any part of
the purchase price. The articles of the incorporation of the
plaintiff are dated August 2, 1890, and were recorded August
4, 1890; and the first meeting of the directors of the corpo-
ration was therein fixed, and was held August 14, 1890. At
that meeting it was resolved that the president (R. J. Schwab)
and secretary (A. B. Myers) of the plaintiff be, and they were
thereby, authorized and directed to purchase of *Bjorkquist*
the land in question, and to pay therefor $32,000, of which
$16,000 was to be paid on the delivery of the deed and ap-
proved abstract of title, and for the balance to give back a
mortgage of $16,000, payable in five years, with interest at
six per cent. The deed from *Bjorkquist* to the plaintiff was
executed September 15, 1890, and on the same day Myers,
as secretary of the plaintiff, paid *Bjorkquist* on such pur-
chase $8,120, and took his receipt therefor; and on the same
day *Bjorkquist* paid to Doerflinger the amount of the mort-
gage he had given him, and obtained his discharge thereof.
*Bjorkquist* testified that he first ascertained that a corpora-
tion was to be the purchaser of his land a few days prior to
September 15, 1890, when his deed was so executed to the

plaintiff.  The findings of the court are abundantly supported by the evidence.  The mere fact that *Bjorkquist* fifteen months prior to such conveyance bought the land for $7,000 less than the price for which he sold it does not tend to impeach the transaction, especially as it is found by the court, upon competent evidence, that it was then worth the full consideration recited in his deed, which was $2,000 more than he actually received.  *Milwaukee C. S. Co. v. Dexter*, 99 Wis. 214, 230, and cases there cited.  Neither of the appellants stood in any confidential relation to the plaintiff or any of the subscribers to its capital stock and hence owed neither it nor them any duty to refrain from making the sale under the circumstances stated.  *Id.*  The facts found and proved bring the case squarely within the ruling of this court in *Godfrey v. Schneck*, 105 Wis. 568.  In pursuance of the ruling in that case, we must hold that the mere authority of Myers to find a purchaser of the land did not contemplate the organization of a corporation to effectuate the purchase, and that Myers's acts in assisting in the formation thereof, in the absence of evidence showing that *Bjorkquist* had any knowledge of Myers's plans or shared in any way in his profits, were outside of the real or apparent scope of the authority of *Bjorkquist*, and not binding upon him.

*By the Court.*— The judgment of the circuit court is affirmed.