J. V. LeClair Company, Respondent, vs. Rogers-Ruger Company, Appellant.

*January 11—January 31, 1905.*

*Money had and received: Collection of debt due former partners: Evidence: Competency of witnesses.*

1. An action for money had and received can be maintained only when the defendant has received money which, in equity and good conscience, he ought to pay to the plaintiff.
2. In an action between former partners or their successors in interest to recover a share of a debt due the firm which had been

excepted from the partnership settlement, it being alleged that plaintiff's share had afterwards been collected by defendant through certain logging transactions with the debtor, the evidence is *held* not to show that defendant had collected or received any part of such debt.

3. Evidence in such case, offered by defendant, as to money and supplies furnished to the debtor in the logging transactions mentioned, and tending to show that said debtor was still indebted to defendant on account of such transactions, was admissible.

4. It appearing from the debtor's own testimony that he did not know even approximately how much timber had been taken from certain lands under his contract with defendant or what the profits therefrom were, he was not competent to testify that it had always been his idea, and he still thought, that there was enough timber taken from such land to pay certain prior claims and also the debt in which plaintiff was interested.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge.    *Reversed.*

This is an action at law, commenced March 31, 1903, to recover $1,327.64, with interest from September 20, 1899, alleged to be due from the defendant to the plaintiff on account of certain partnership logging transactions in which J. V. LeClair and Rogers & Ruger, as partners, were engaged, under written contracts between them, during 1897 and 1898. The plaintiff and defendant are both Wisconsin corporations, and the plaintiff claims by assignment from J. V. LeClair, and the defendant is sought to be charged as the successor of the firm of Rogers & Ruger.    The complaint alleges, among other things, in effect, that all such logging transactions were closed between them, and settled to the mutual satisfaction of both parties, except a claim exceeding $3,000 against O. J. Dodge & Co., which on September 20, 1899, the defendant, as the successor of Rogers & Ruger, on its own responsibility, settled with Dodge & Co., and appropriated to itself LeClair's interest in said claim, of the value of $1,327.64, and has collected and holds the same, and refuses to pay it over to the plaintiff, for which it demands judgment.

The defendant answered by way of admissions, denials, and counter allegations, among other things, that such claim against Dodge & Co. is the only unsettled transaction mentioned; that the amount of that indebtedness has never been fully determined; that it is about $3,000, and that LeClair is entitled to thirty-five per cent. of the same when collected; and specifically denies that September 20, 1899, or at any time, the defendant settled with Dodge or Dodge & Co. the said indebtedness, or any portion of it; and denies that it appropriated to itself any interest LeClair had in said claim in the sum mentioned, or any other sum; and denies that it has collected or has in its possession or ever had in its possession any part of such indebtedness due from Dodge or Dodge & Co.; and defendant alleges that such indebtedness from Dodge & Co. is still due, owing, and unpaid.

It was admitted on the trial that LeClair's interest in two thirds of the claim was thirty-five per cent., and in one third of the claim fifty-five per cent. At the close of the trial the court directed a verdict in favor of the plaintiff for $1,298.75, which is made up of the per cents mentioned on $3,000, with $48.75 interest thereon from the commencement of this action. From the judgment entered upon such verdict accordingly, the defendant appeals.

The partnership agreements between Rogers & Ruger and J. V. LeClair, mentioned in the pleadings, were dated, respectively, November 17, 1897, and February 1, 1898, one of which is marked "Exhibit C," and the other "Exhibit B," and are to the effect that they were to purchase the white and Norway pine timber on the 120 acres in section 12, described in Exhibit C, for $2,750, and on the 160 acres in section 1, described in Exhibit B, for $5,600, upon the following terms and conditions: Rogers & Ruger are to furnish the purchase price, and to advance the money, without interest, necessary to the logging, sawing, and carrying of the timber *until the sale of the same is effected;* both parties are to work for the

best interests of all in the cutting and disposing of the timber, and neither party to make any charge for services—LeClair to have the supervision of all matters incident to the cutting and selling of the timber, and Rogers & Ruger to keep all books and accounts in connection with the same; the net profits or losses on the purchase of timber and sale of lumber are to be shared between the parties as follows: LeClair fifty-five per cent., and Rogers & Ruger forty-five per cent., on the timber taken from the lands described in Exhibit C, and Le-Clair thirty-five per cent., and Rogers & Ruger sixty-five per cent., on the timber taken from the lands described in Exhibit B.

It is undisputed that all the lands described in those two contracts belonged to Dodge & Co. It appears, and is undisputed, that September 20, 1899, the defendant herein entered into a written agreement with O. J. Dodge & Co. wherein it is recited that prior thereto said parties made and entered into certain agreements for the cutting, hauling, and manufacturing into lumber certain timber from the lands mentioned in said Exhibits C and B, to be manufactured at the mill of Dodge & Co., and, in the course of the carrying out of said agreement, Dodge & Co. had become indebted to this defendant in the sum of "approximately" $3,000, the actual amount of which is not yet determined, for the reason that the work contemplated in said agreements is not yet completed, of which said sum $1,500 is hereby agreed to be for machinery furnished to Dodge & Co. by this defendant; and further recited, in effect, that A. P. Lovejoy held a mortgage of $900 given by Dodge & Co. on the 160 acres in section 1, described in Exhibit B, and also on eighty acres of other lands in section 30, not described in either of those contracts; and also recited that Dodge & Co. are the owners of all of said lands, and also 160 acres of other lands described in section 6, not mentioned in either of said contracts; and further recited that the parties thereto were desirous during the then

coming season of logging said lands and manufacturing the logs therefrom into lumber, and, if the operations cannot be completed during the present season, then they should be during the then ensuing season; that the defendant herein has a second mortgage on the lands covered by the Lovejoy mortgage, for $210, and interest; that Dodge & Co. desire to secure the financial aid of this defendant in logging said lands, and in sawing the logs taken therefrom into lumber, and disposing of said lumber; therefore it was therein mutually agreed, in effect, that Dodge & Co. were to cut and remove from said lands, and the whole thereof, all merchantable pine timber thereon, and haul the same to the mill and saw the same into lumber, and haul the same and load the same on cars, as therein required; that the defendant herein agrees to furnish the necessary funds to carry on the whole of said operations, and to have particular charge of receiving orders for lumber, to keep all books except time and mill books, to invoice shipments, and attend generally to all office work connected with said operations, to make collections, to assume and have general financial control and direction of the sale of the lumber, the collection of the amounts due therefor, and the giving or refusing of credits to purchasers; that Dodge & Co. were to have charge of the logging operations and the sawmill work, piling, handling, loading, and shipping of lumber, and should keep time and mill books of account; that the title to the lumber was immediately to pass to this defendant upon the piling of the lumber at the mill, and that, in the further handling of the same, Dodge & Co. were to act only as the agents of this defendant; and that it was therein further agreed that the moneys collected from the sales of lumber should be disposed of as follows: first, to pay the Lovejoy mortgage of $900 and interest; second, to repay to this defendant all moneys advanced under the contract, with interest at six per cent.; third, the net balance remaining after paying such two items should be disposed of as follows: There

shall be due to Dodge & Co. $3 per 1,000 feet for all logs cut and removed from any of said lands, and there shall be due to the defendant herein the said $3,000 indebtedness, but, if this net balance is insufficient to pay the last two mentioned items, they shall be paid *pro rata.* If these last two items shall be paid in full, and there shall remain any balance, the same shall be divided equally between Dodge & Co. and this defendant.

The cause was submitted for the appellant on the brief of *H. V. Gard,* and for the respondent on that of *Geo. P. Knowles.*

CASSODAY, C. J. It is undisputed that the partnership transactions mentioned in the pleadings were all settled before the commencement of this action, except an indebtedness of approximately $3,000 against Dodge & Co., in which LeClair's interest was thirty-five per cent. on two thirds thereof, and fifty-five per cent. on one third thereof, and that the balance of such indebtedness belonged to the firm of Rogers & Ruger. It is also undisputed that both parties to this action are corporations organized under the laws of this state, and that prior to the commencement of this action such interest of LeClair passed to the plaintiff herein by assignment, and that such interest of Rogers & Ruger therein became the property of this defendant. For convenience, we will hereafter refer to LeClair as the one party, and the Rogers Company as the other party.

At the close of the testimony, each party moved for the direction of a verdict in its favor. The court denied the defendant's motion and granted the plaintiff's motion, and thereupon directed a verdict in favor of the plaintiff and against the defendant for $1,298.75, made up of the following items: thirty-five per cent. of $2,000, amounting to $700; fifty-five per cent. of $1,000, amounting to $550; and $48.75, being the interest on those sums from the commencement of

the action. Of course, the thirty-five per cent. mentioned had reference to the thirty-five per cent. of "the net profits or losses" mentioned in the contract of February 1, 1898 (Exhibit B), and the fifty-five per cent. mentioned had reference to the fifty-five per cent. of "the net profits or losses" mentioned in the contract of November 17, 1897 (Exhibit C).

1. This is an action at law for money had and received. Such an action "can be maintained only when the defendant has received money which, in equity and good conscience, he ought to pay to the plaintiff." *Glendale I. Asso. v. Harvey L. Co.* 114 Wis. 408, 412, 413, 90 N. W. 170, and cases there cited. In such an action "it is not sufficient to show that the defendant has, by fraud or wrong, caused the plaintiff to pay money to others or to sustain loss or damage." *National T. Co. v. Gleason,* 77 N. Y. 400, 403. As recently stated by our late Brother BARDEEN: "The purpose of such an action is not to recover damages, but to make the party disgorge, and the recovery must necessarily be limited by the party's enrichment from the alleged transaction." *Limited I. Asso. v. Glendale I. Asso.* 99 Wis. 54, 59, 74 N. W. 633; *Johnston v. Charles Abresch Co.* 109 Wis. 182, 184, 85 N. W. 348. Such being the law applicable, it is obvious that, in order to sustain such direction of the verdict, it must appear from the undisputed evidence that before the commencement of this action the defendant had received $3,000 as net profits from the lumber referred to in the two contracts (Exhibits B and C) in which LeClair had such fractional interest, as mentioned. The question recurs whether such direction of the court is sustained by the undisputed evidence.

The theory of the complaint is that such indebtedness of Dodge & Co. was ascertained September 20, 1899, the date of the contract between the defendant and Dodge & Co. (Exhibit A), and that the defendant then, on its own responsibility, settled such indebtedness with Dodge & Co., and collected and appropriated the same, including LeClair's interest

therein, to itself, and still had possession thereof, and refused
to pay it over to the plaintiff.   Accordingly the complaint de-
mands interest from the date of that contract, September 20,
1899.   But the evidence fails to sustain such theory.   Mr.
LeClair himself testified, among other things, to the effect
that he did not know of that contract until the following year
(1900), when he claims to have had an accounting and settle-
ment with the Rogers Company of all property belonging to
them, as partners, except such indebtedness of about $3,100
due to them from Dodge & Co., of which he was to have the
fractional shares mentioned; that the Rogers Company had
never paid him his proportionate share of that indebtedness,
but that everything else had been paid and settled; that
March 12, 1902, the defendant paid him $1,190.49, and that
he gave his receipt therefor "in full of all claims . . . except
as to O. J. Dodge & Co. shortage."   That was two years and
a half after the making of contract Exhibit A.   Such indebt-
edness, therefore, was still unpaid at the time of giving that
receipt.   Apparently it was sought to have payment of such
indebtedness inferred from the extensive logging deals be-
tween the defendant and Dodge & Co.   It appears from the
testimony of the witness Dodge, and is undisputed, that
Dodge & Co. not only got in the logs and timber from the 280
acres of land described in the two contracts (B and C) in
which LeClair was interested, but also got in the logs and
timber from 240 acres of other lands, in which LeClair was
not interested, described in Exhibit A, and also got in logs
and timber, under parol contracts, from still other lands, not
mentioned in any of those written contracts, from which there
was manufactured between three and four million feet of
lumber, and that all such logs and timber were mixed together
and sawed and piled at the same mill, and that no separate
account of the logs got in under any of such contracts was
ever kept.   The witness Dodge also further testified to the
effect that he thought there was timber enough taken from

the lands described in Exhibit A to pay the several amounts thereby secured, but that he could not state the amount of profit made under that contract; that the advances to his firm had been paid; that he did not know whether any portion of the moneys realized from Exhibit A was ever applied toward the $3,000 secured by that contract; that he never got any receipt or any paper, aside from the satisfaction of the Lovejoy mortgage, showing what amounts were paid under that contract; that the defendant had rendered a number of statements of moneys received and disbursed under that and subsequent contracts, but never any separate statement as to that contract, and he thought the lumber under that contract was so badly mixed with lumber under other contracts as to render it impossible to make such separate statement; that he knew it was all piled together and sold, and no separate account of it kept; that he understood that the lumber was all to go in together and to be sold in one bulk, and so his company did not furnish the defendant any way to keep the lumber separate; that he could not say how much of the lumber was under Exhibit A, as they logged there without scaling the logs, nor how much under other contracts; that no final settlement was ever made; that he could not probably come within a couple of million feet of it, and he would not undertake to say how much profits there were; and that he never settled or asked for a settlement under Exhibit A.

The burden of proof was on the plaintiff. It failed to prove that such admitted indebtedness of Dodge & Co., or any part thereof, had been collected or received by the defendant before the commencement of this action. On the contrary, some of its evidence tended to prove that it had not been so collected or received. Seemingly, counsel for the plaintiff was of that opinion, for, just before asking for the direction of a verdict in favor of the plaintiff, he stated to the court "that the *balance of the account* in favor of *Rogers-Ruger Company* and Mr. LeClair against Mr. Dodge or O. J. Dodge

& Co. was just $3,000." The defendant's witness Ruger testified that there had been no settlement of that account. Seemingly the ruling of the trial court was based on the theory that the plaintiff could, in this form of action, recover LeClair's share of such indebtedness, whether the same, or any part of it, had been collected or received by the defendant or not. This was contrary to the authorities cited. It follows that the court improperly directed a verdict in favor of the plaintiff.

2. Numerous errors are assigned for the admission and exclusion of testimony. Upon the principles of law stated, it was, of course, proper for the plaintiff to prove, as far as it could do so by competent evidence, whether the indebtedness of Dodge & Co. in question, or any part thereof, had been paid to or received by the defendant; and so it was equally proper for the defendant to prove, so far as it could do so by competent evidence, that such indebtedness had not been so paid to or received by the defendant. The plaintiff's witness Dodge was asked on cross-examination whether he was indebted to the defendant as a result of the logging transactions under the contract Exhibit A, and, upon the principles already stated, the same was improperly excluded. So the court improperly excluded testimony tending to prove that Dodge & Co. were still indebted to the defendant "on account of that whole transaction that was kept together there," as he had stated. So it was error for the court to exclude testimony offered on the part of the defendant tending to prove how much money and supplies had been furnished to Dodge & Co. by the defendant under contract Exhibit A as originally drawn, and also as subsequently modified. So it was error for the court to exclude testimony offered by the defendant tending to prove whether at any time since the making of the contract Exhibit A there had been anything owing to Dodge & Co. from the defendant, over and above the moneys and supplies it had furnished to that company. The witness

Dodge, on the part of the plaintiff, was allowed to state that it had always been his idea, and he still thought, that there was enough timber taken from the lands described in Exhibit A to pay the moneys advanced for logging, and the Lovejoy mortgage of $900, and this claim of $3,000, in which LeClair had such interest. Such testimony was so admitted without any showing that the witness had the requisite knowledge to testify on that subject, and his testimony above stated shows that he was incompetent to give such testimony. On the same theory the court, at the close of the testimony, refused to strike out so much of the testimony of the witness Dodge as tended to show that there were profits made from the timber described in Exhibit A, distinct from the timber subsequently taken in. We are constrained to hold that there was a mistrial.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.