Marine Company, Respondent, vs. City of Milwaukee, Appellant.

*November 1—November 19, 1912.*

*Taxation: Recovery of illegal "tax:" Special assessments not covered by statute: Money had and received: When action will not lie.*

1. In sec. 1164, Stats. (1898),—providing for an action by the taxpayer to recover any unlawful tax levied and collected from him,—the word "tax" relates only to general taxes and not to special assessments.
2. No common-law action lies against a city to recover, as for money had and received, the amount of a special assessment paid un-

der protest, where before the action was commenced the city
treasurer had, pursuant to law, paid over the amount so col-
lected to the holder of the improvement certificate.

3. The basis of a common-law action for money had and received is
not only the loss occasioned to the plaintiff on account of pay-
ment of the money, but also the consequent enrichment of the
defendant by reason of having received the same.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge.    *Reversed.*

Action under sec. 1164, Stats. (1898), to recover the sum
of $286.11 paid the defendant city, under protest, for a spe-
cial assessment against plaintiff's property, which assessment,
it is claimed, was void for certain irregularities therein not
here necessary to specify.    Sec. 1164 is as follows:

"Any person aggrieved by the levy and collection of any
unlawful tax assessed against him in any town, city or village
may have and maintain an action against such town, city or
village for the recovery of all money so unlawfully levied and
collected of him.    And every such action to recover back any
such money hereafter paid shall be brought within one year
after such payment and not thereafter; and in case any such
town, city or village shall have paid a judgment recovered in
any such action, after having paid over to the county treas-
urer the state and county tax levied and collected as part of
such unlawful tax, such town, city or village shall be credited
by the county treasurer, on the settlement with the proper
treasurer for the taxes of the ensuing year, the whole amount
of such state and county tax so paid into the county treasury;
and the county treasurer shall also be allowed by the state
treasurer the amount of state tax so illegally collected and
paid in his settlement with the state treasurer next after the
recovery of such judgment and collection thereof; and if any
part of such unlawful tax shall have been paid over to any
school district before the payment of such judgment such town
shall charge the same to such district, and the town clerk
shall add the same to the taxes of such school district in the
next annual tax; provided, however, that no action shall be
maintained under the provisions of this section unless it shall

be made to appear to the court that the plaintiff has paid more than his equitable share of such taxes."

A special assessment certificate was issued to the contractor pursuant to sec. 13 of ch. VII of the city charter. Said section provides that the certificate may be paid to the city treasurer; that the city treasurer shall receive the amounts paid on such certificates and hold the same for the benefit of the owners thereof, and such owners shall be entitled thereto on producing and surrendering the certificate to be canceled. Plaintiff paid the sum in question on the 29th day of January, 1910. On the 17th day of February of the same year the city treasurer paid the amount to the holder of the certificate, who delivered it up to be canceled pursuant to the charter provision. This action was begun January 11, 1911. At the close of the plaintiff's case the defendant moved, alternatively, for a nonsuit, or, if the court was of the opinion that the defendant was not entitled to a nonsuit and that the tax and the assessment upon which the tax was paid were either of them void, for a reassessment under the provisions of sec. 1210$d$, 1210$e$, 1210$f$, and 1210$g$ of the Statutes. The motions were denied by the court. The defendant offered no evidence, and the court, after making certain findings of fact relative to the assessment, held (1) that the defendant altered and changed the grade of the street in question without legal authority, and assessed the sum of $286.11 against the real estate of the plaintiff, for the work done in consequence of such change of grade, without legal authority so to do; and (2) that plaintiff is entitled to judgment against the city for said sum of $286.11 with interest, together with the costs of the action. From a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.*

For the respondent the cause was submitted on the brief of *Frank B. Van Valkenburgh.*

VINJE, J.   This action is brought under sec. 1164, Stats. (1898), to recover money paid to the city, under protest, for a special paving tax assessed on plaintiff's lot.   It is claimed that the sum, or at least a portion thereof, so paid was really assessed and collected for an illegal change in the grade of the street and not for paving the same.   The question arises, Does the statute apply to special improvement taxes ?   The word "tax" is generically broad enough to include special assessments, and whether or not it does so in a statute must be gathered from its context and the legislative intent, as ascertained from the general scheme of the act and the cognate acts of which it is designed to become a part.   This statute appears under the subhead of "Miscellaneous provisions" in that part of ch. 49 relating to the assessment and collection of general taxes.   It is followed by the subhead, "The assessment and collection of special taxes."   It will be observed that the section provides that in case any town, city, or village shall have paid a judgment recovered in any such action, after having paid over to the county treasurer the state and county tax levied and collected as part of such unlawful tax, such town, city, or village shall be credited by the county treasurer, on the settlement with the proper treasurer for the taxes of the ensuing year, the whole amount of such state and county tax so paid into the county treasury.   It also provides for a credit to the county treasurer by the state treasurer of the amount of state tax so collected and paid over to the state treasurer, and if any part of the unlawful tax shall have been paid to any school district before the payment of the judgment, such town shall charge the same to such district, and the town clerk shall add the same to the tax of such school district in the next annual tax.   It seems apparent from these provisions that the word "tax" used in this statute relates only

to general taxes and not to special assessments, for careful
provision is made enabling the town, city, or village to reim-
burse itself for any moneys it may have paid in case it shall
be determined in the action that the plaintiff has been com-
pelled to pay a greater tax than in justice and equity he
should have paid. That the word "tax" as used in sec. 1164
relates to a general tax only and not to special assessments is
made practically certain by sec. 1164*a,* which provides that if
upon the trial of an action under the preceding section it shall
appear that the assessment upon which the taxes were so paid
is void, the court, before entering judgment, shall continue
the action for a sufficient time to permit a reassessment. It
further prescribes that the validity of the reassessment pro-
vided for may be attacked and determined and subsequent re-
assessments may be had as provided by sec. 1210*b;* provided,
that such reassessment shall in all cases be made by the *as-
sessor* of the assessment district wherein the property to be
reassessed is situated. Sec. 1210*b* applies only to the reas-
sessment of general taxes, and the fact that the assessor is to
make the reassessment in case plaintiff prevails in the action
shows conclusively that the statute applies to general taxes
only, for, confessedly, the legislature could not have intended
that the assessor of the assessment district should make a re-
assessment of special improvement taxes. Our statutes re-
lating to the reassessment of special assessments provide that
the proper authorities empowered to make the original assess-
ment shall also make the reassessment. No case has come to
our notice where it is the duty of the assessor to make special
assessments.

Sec. 1164, as first enacted in ch. 88 of the Laws of 1870,
did not include the words *city* and *village.* The act provided
(sec. 1): "Any person aggrieved by the levy and collection
of any unlawful tax assessed against him in any *town,* may
have and maintain his action against such town for the re-
covery of all moneys so unlawfully levied and collected from

him." It is obvious that the word "tax" as here used could relate only to general taxes, for towns do not levy special assessments against property within their borders. The words "city" and "village" first appeared in ch. 334 of the Laws of 1878, but there is nothing in that chapter to indicate any intention to broaden or extend the meaning of the term "tax" as previously used. All actions heretofore brought under sec. 1164, so far as we have been able to ascertain, have related to general taxes. See *Keystone L. Co. v. Pederson,* 93 Wis. 466, 67 N. W. 696; *Day v. Pelican,* 94 Wis. 503, 69 N. W. 368; *Wells v. Western P. & S. Co.* 96 Wis. 116, 121, 70 N. W. 1071; *Bonnin v. Zuehlke,* 122 Wis. 128, 134, 99 N. W. 445. It is evident, therefore, from the section in question and from the cognate statutes of which it forms a part, that the word "tax" as used therein does not include or relate to special assessments, and that no action under the statute can be maintained to recover money paid for such assessments.

Under many special assessment statutes, as in the present case, the money is collected for the owner of the improvement certificate and is required to be paid over to him upon the presentation thereof to the treasurer of the municipality in which the special assessment tax is levied. It could not have been within the contemplation of the legislature that a taxpayer could maintain an action against a municipality after it had paid the amount of the tax collected to the person entitled to receive the same without any provision for reimbursing itself. In the present case the city treasurer had collected and paid over the money to the holder of the certificate before the action was commenced. Since the city treasurer had paid over to the person entitled thereto the whole of the tax collected, no common-law action for money had and received can be maintained against the city. Such action is founded upon the theory that the defendant has the money which is sought to be recovered, or that he has been enriched by the transaction, so that in equity and good conscience he should

be compelled to turn over to plaintiff a portion or the whole of the amount in controversy. The basis of a common-law action for money had and received is not only the loss occasioned to the plaintiff on account of the payment of the money, but the consequent enrichment of the defendant by reason of having received the same. 27 Cyc. 869; *Limited Inv. Asso. v. Glendale Inv. Asso.* 99 Wis. 54, 74 N. W. 633; *Johnston v. Charles Abresch Co.* 109 Wis. 182, 85 N. W. 348; *Glendale Inv. Asso. v. Harvey L. Co.* 114 Wis. 408, 90 N. W. 456; *Douglas Co. v. Sommer,* 120 Wis. 424, 98 N. W. 249; *J. V. LeClair Co. v. Rogers-Ruger Co.* 124 Wis. 44, 102 N. W. 346. It follows, therefore, that neither an action under the statute nor a common-law action for money had and received lies against the city, and that the court should have granted the motion for a nonsuit.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint on the merits.